UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| WILLIAM C. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:19-cv-00340-JRS-MJD |
| ) | |
| I.D.O.C., et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**

William Davis cannot walk without a cane, a railing, or some other assistive device. In 2015 or 2016, Mr. Davis made statements used against two Wabash Valley Correctional Facility (WVCF) officers accused of assaulting prisoners. In 2017, those officers confiscated Mr. Davis's cane and initiated a malicious disciplinary charge against him. He remained without his cane for six weeks, during which time he could not walk and often could not access meals or showers.

Mr. Davis sued the two officers, two more prison officials to whom he sent letters and grievances, and the Indiana Department of Correction (IDOC). One officer passed away during the course of the litigation, and claims against him have been dismissed. The remaining four defendants now move for summary judgment. Dkt. 60.

The grievance defendants are entitled to judgment as a matter of law. However, a reasonable jury could resolve the remaining claims in Mr. Davis's favor. Accordingly, the defendants' motion for summary judgment is **granted in part** and **denied in part**.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

## II. Facts

**A.     Background**

In 2005, a car ran over Mr. Davis and crushed his right leg. Dkt. 62-1 at 4 (Davis Dep. 10:19–11:6). Since then, he has only been able to walk using a cane, railing, or other assistive device. *Id.* (Davis Dep. 12:25–13:8).

In 2015 or 2016, Mr. Davis witnessed two officers—Lieutenant Fisher and Sergeant Shroyer—"assaulting prisoners" at WVCF. *Id.* at 10–11 (Davis Dep. 37:9–39:25). He documented his observations in written statements that were used against them in an investigation and a lawsuit. *Id.*

**B.     Confiscation of Cane and Retaliatory Statements**

Sergeant Shroyer confiscated Mr. Davis's cane on July 12, 2017. Dkt. 72-4. Afterward, both Lieutenant Fisher and Sergeant Shroyer reported to their supervisor, Captain Brewer, that the medical department directed them to take the cane. *Id.* They maintained that Mr. Davis had been walking to the upstairs portion of his housing unit to shower (instead of showering on the first floor) and the medical staff determined that his cane should be confiscated because he no longer needed it. *Id.*; dkt. 62-6 at 1; dkt. 72-2.

The medical staff told a different story. According to Health Service Administrator Hobson, custody staff—presumably Sergeant Shroyer—confiscated the cane on July 12 and handed it over to a doctor. Dkt. 72-2. When Sergeant Shroyer handed over the cane, he reported that Mr. Davis "used the cane as a weapon to assault staff and other offenders." *Id.*

Around this time, Lieutenant Fisher made statements that heightened Mr. Davis's risk of violence or retaliation from other inmates and officers. Two or three times, Lieutenant Fisher said—loud enough for other inmates to hear—that Mr. Davis was in prison for sexually abusing

children. Dkt. 62-1 at 7–8 (Davis Dep. 25:14–27:12). As a result, inmates threatened that they were going to "stomp" Mr. Davis and kill him. *Id.* Lieutenant Fisher also told staff members that Mr. Davis had assaulted staff.[1] *Id.* at 8 (Davis Dep. 27:13–28:1).

## C.   Disciplinary Action and Confinement in Segregation

Without his cane, Mr. Davis could not walk to the dining hall to eat his meals. There was a bench between his cell and the dining hall that he could use to support himself, and he could also get to the dining hall by sitting down and scooting across the floor. Dkt. 62-1 at 5–6 (Davis Dep. 15:8–18:10). When Lieutenant Fisher and Sergeant Shroyer saw Mr. Davis scooting, they joked about him being weak and crippled. *Id.* at 6–7 (Davis Dep. 21:18–22:12).

Eventually, Lieutenant Fisher and Sergeant Shroyer ordered that Mr. Davis could not scoot across the floor or use walls or furniture to steady himself. Dkt. 62-1 at 5–6 (Davis Dep. 15:8–18:10). When they were not on duty, Mr. Davis could scoot to the dining hall or lean against a bench to walk there. *Id.* Thus, when they were on duty, Mr. Davis could not eat, as he could not get to the dining hall and was not permitted to eat in his cell. *Id.*

On July 18, 2017, Sergeant Shroyer saw Mr. Davis attempting to scoot across the floor and ordered him to stand up and walk. Dkt. 62-3. When Mr. Davis failed to do so, Sergeant Shroyer lifted him up and "physically guide[d] him to his cell." *Id.* at 1. Sergeant Shroyer submitted a conduct report charging Mr. Davis with fleeing or resisting staff. *Id.* at 4. The charge was eventually reversed on appeal "due to insufficient evidence of resisting and medical evidence of ambulatory issues." Dkt. 72-5.

---

[1] Based on Mr. Davis's deposition testimony, it is not clear how he learned that Lieutenant Fisher told other staff members that he assaulted staff. As such, it is not clear that this testimony would survive a hearsay objection at trial. Nevertheless, the defendants tendered the deposition transcript in support of their motion, and they have not addressed this testimony or its admissibility. Accordingly, the Court considers it for purposes of the summary judgment motion. This does not foreclose any objection at trial.

Before the disciplinary charge was reversed, Mr. Davis was confined in the Secure Housing Unit (SHU) for 30 or 40 days. Dkt. 62-1 at 6 (Davis Dep. 18:2–20:6). In the SHU, inmates were confined to their cells 23 hours per day. *Id.* (Davis Dep. 20:3–15). Without his cane, Mr. Davis was effectively confined to his cell 24 hours per day. *Id.*

In the SHU, Mr. Davis's meals were delivered to his cell, but the shower was located at the opposite end of the range, 12 to 14 cells away from his cell. *Id.* at 6 (Davis Dep. 19:13–20:15), 19–20 (Davis Dep. 72:8–74:8). He could not walk to the shower because he did not have access to any assistive device and officers cuffed his hands behind his back when he left his cell. *Id.* A couple of times, staff members carried Mr. Davis to the showers, but he went weeks at a time without showering and "was stinking." *Id.*

Mr. Davis received a cane again on August 25, 2017—about six weeks after Sergeant Shroyer confiscated his previous cane. *See* dkt. 62-7. In November 2017, the medical staff granted him a cane indefinitely. Dkt. 62-11.

**D.    Grievances and Letters**

Mr. Davis began submitting grievances and letters in August 2017 and continued into 2018. *See* dkts. 62-6, 62-8, 62-9, 62-10, 62-12, 62-13, 62-14, 62-15, 62-16. Mr. Davis sought to hold Lieutenant Fisher and Sergeant Shroyer accountable for confiscating his cane and spreading rumors that he assaulted staff members. Mr. Davis also alleged that staff members were intercepting correspondence he submitted to Captain Brewer, *see* dkts. 62-8, 62-10, and that Grievance Specialist Littlejohn did not handle his grievances properly under the prison's policies, *see* dkts. 62-13, 62-14, 62-15, 62-16. None of these documents alleges that Captain Brewer or Ms. Littlejohn were involved in or responsible for confiscating his cane or confining him in disciplinary segregation.

5

Lieutenant Fisher knew about Mr. Davis's grievances, letters, and complaints, and he responded with threats. Dkt. 62-1 at 8–9 (Davis Dep. 29:8–30:20). He said something like, "I already took your cane. You keep all this shit up, I'm going to do more." *Id.* at 8 (Davis Dep. 29:12–19).

### E.      Initiation of This Action, Screening, and Sergeant Shroyer's Dismissal

Mr. Davis filed his complaint in July 2019. Dkt. 1. At screening, the Court identified plausible Eighth Amendment claims and First Amendment retaliation claims against Lieutenant Fisher and Sergeant Shroyer. Dkt. 13. The Court also recognized plausible Eighth Amendment claims against Captain Brewer and Ms. Littlejohn and an Americans with Disabilities Act (ADA) claim against the IDOC based on Mr. Davis's allegations that he could not access the dining hall or showers while his cane was confiscated. *Id.*

The Court did not identify standalone claims regarding Mr. Davis's ability to present or appeal grievances. The Court directed Mr. Davis to notify the Court if he believed he alleged additional claims in the complaint, and he never did so. *See id.* at 5.

Sergeant Shroyer passed away in March 2020 while this action was in discovery. Dkt. 42. Mr. Davis did not move to substitute a different individual or entity for Sergeant Shroyer, and the Court dismissed the claims against him in April 2021. Dkt. 64.

### III. Discussion of Claims

All four defendants seek summary judgment. Captain Brewer and Ms. Littlejohn are entitled to judgment as a matter of law because no evidence would allow a jury to find them personally involved in or responsible for violating Mr. Davis's Eighth Amendment rights. However, the record contains sufficient evidence at this stage of the litigation to allow a jury to find for Mr. Davis on the claims pending against Lieutenant Fisher and the IDOC.

### A. Captain Brewer and Ms. Littlejohn

Since screening, claims against Captain Brewer and Ms. Littlejohn have proceeded under the Eighth Amendment. "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). As discussed below, the Eighth Amendment also "prohibits unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

The claims against Captain Brewer and Ms. Littlejohn also have proceeded as claims for damages pursuant to 42 U.S.C. § 1983. There is a "well-established principle of law that a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed." *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011). More succinctly, "[l]iability under § 1983 is direct rather than vicarious." *Horshaw v. Casper*, 910 F.3d 1027, 1030 (7th Cir. 2018).

Within the confines of the Eighth Amendment and § 1983, Mr. Davis's claims against Captain Brewer and Ms. Littlejohn cannot proceed beyond summary judgment.

This action is based on Mr. Davis's allegations that Lieutenant Fisher and Sergeant Shroyer maliciously confiscated his cane and prevented him from using other assistive devices to walk. When he attempted to scoot from his cell to the dining hall, they ridiculed him and then punished

7

him. The result of their conduct was that Mr. Davis was unable to walk for six weeks and was deprived of meals and showers for significant stretches during that time. There is no allegation—much less evidence—that Captain Brewer or Ms. Littlejohn played any role in confiscating Mr. Davis's cane, charging him with a disciplinary offense, or setting the conditions of his confinement in the SHU.

Mr. Davis alleges that Captain Brewer violated his rights by "not supervising" Lieutenant Fisher and Sergeant Shroyer. Dkt. 62-1 at 17 (Davis Dep. 62:18–24). But, under § 1983, "supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw*, 910 F.3d at 1029. A "supervisor may still be personally liable for the acts of his subordinates," but only if he becomes personally involved in the violation by (1) approving their conduct and the basis for it; (2) knowing about the conduct and facilitating it, approving it, condoning it, or turning a blind eye to it; or (3) learning of their unconstitutional conduct then failing to prevent a recurrence of it. *See Backes*, 662 F.3d at 870. Mr. Davis does not allege that Captain Brewer knew of Lieutenant Fisher's and Sergeant Shroyer's misdeeds while they were ongoing or that their bad acts recurred after he notified Captain Brewer.

Instead, Mr. Davis claims that Captain Brewer did not receive every grievance and letter Mr. Davis sent him, and he did not hold Lieutenant Fisher or Sergeant Shroyer accountable for their misconduct after he learned of it. These claims "fail as a matter of law." *McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013). "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a

8

guard who rejects an administrative complaint about a completed act of misconduct does not." *Id.* at 609–10.

Mr. Davis's claims against Ms. Littlejohn fail for the same reasons. He does not allege, and no evidence suggests, that she played any role in depriving him of his cane or confining him in the SHU without the ability to walk. He does not allege that Ms. Littlejohn failed to act while the officers were abusing him or that they continued to abuse him after she mishandled his grievances. Rather, Mr. Davis contends that Ms. Littlejohn prevented him from filing grievances and appeals after the other defendants violated his rights. *See* dkt. 62-1 at 18 (Davis Dep. 67:11–18). Like Captain Brewer, Ms. Littlejohn is accused only of failing to resolve "completed act[s] of misconduct." *George*, 507 F.3d at 609–10.

The misconduct of which Captain Brewer and Ms. Littlejohn are accused does not violate the Eighth Amendment, and no evidence suggests that they were personally involved in any misconduct that did violate the Eighth Amendment. No reasonable jury could find that they violated Mr. Davis's constitutional rights, and they are therefore entitled to summary judgment.

### B. Lieutenant Fisher

Mr. Davis's claims against Lieutenant Fisher proceed under the First and Eighth Amendments. A jury viewing the evidence in the light most favorable to Mr. Davis could reasonably resolve those claims in his favor. Accordingly, both claims against Lieutenant Fisher will move forward.

#### 1. Eighth Amendment Claim

Lieutenant Fisher asks the Court to grant summary judgment because he was not personally responsible for Mr. Davis's medical care or involved in depriving him of treatment for a serious medical need. As he correctly notes, the Eighth Amendment obligates the government "to provide

9

medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). But the Eighth Amendment is not so narrow.

Explicitly, the Eighth Amendment prohibits the infliction of cruel and unusual punishments. This prohibition extends to "unnecessary and wanton infliction of pain, thus forbidding punishment that is 'so totally without penological justification that it results in the gratuitous infliction of suffering.'" *Calhoun*, 319 F.3d at 939 (7th Cir. 2003) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "Such gratuitous infliction of pain always violates contemporary standards of decency." *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). Such conduct need not cause a physical injury to violate the Eighth Amendment, "for the wanton infliction of psychological pain is also prohibited." *Id.* (citing *Hudson*, 503 U.S. at 16).

Viewed in the light most favorable to Mr. Davis, the evidence tells the following story. Lieutenant Fisher knew Mr. Davis and knew he needed a cane to walk. Sergeant Shroyer confiscated Mr. Davis's cane, perhaps with Lieutenant Fisher's input. *See* dkt. 62-1 at 8 (Davis Dep. 29:12–13) ("After he took my cane, [Lieutenant Fisher] more or less said I already took your cane."). Regardless, Lieutenant Fisher joined Sergeant Shroyer in falsely reporting that the cane was confiscated at the medical staff's direction. When Mr. Davis attempted to scoot across the floor from his cell to the dining hall, Lieutenant Fisher made jokes about him being weak and crippled. Eventually, he went further and ordered that Mr. Davis could not scoot across the floor or use walls or furniture to steady himself—effectively meaning Mr. Davis could not eat.

Lieutenant Fisher offers no penological justification for these actions and makes no attempt to argue that they conform to contemporary standards of decency. The record would allow a reasonable jury to conclude that Lieutenant Fisher engaged in a course of conduct that intentionally

10

inflicted gratuitous suffering on Mr. Davis. The Eighth Amendment claim against Lieutenant Fisher will proceed.

### 2. First Amendment Claim

Mr. Davis also alleges that this conduct was retaliation for his previous statements about Lieutenant Fisher's mistreatment of inmates. "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020).

> First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action.

*Id.*

#### a. Protected Activity

The record does not document Mr. Davis's protected activity with perfect clarity, but it would allow a jury to conclude that Mr. Davis engaged in activities protected by the First Amendment before Lieutenant Fisher's misconduct began. Mr. Davis testified that he observed Lieutenant Fisher and Sergeant Shroyer assaulting inmates and that his statement was used against them in a lawsuit and a criminal investigation. *See* dkt. 62-1 at 10–11 (Davis Dep. 37:14–38:11). Lieutenant Fisher correctly notes that Mr. Davis's account omits several details—including what specific proceedings the statement was used in. Nevertheless, the types of statements Mr. Davis attested to making are protected by the First Amendment. *Cf. Lane v. Franks*, 573 U.S. 228, 238–41 (2014) (First Amendment "protects a public employee who provides truthful sworn testimony, compelled by subpoena, outside the scope of his ordinary job responsibilities."); *Morales v. Jones*, 494 F.3d 590, 598 (7th Cir. 2007) (Deposition testimony provided in response to subpoena was subject to First Amendment protections.). And Mr. Davis's testimony here is evidence—however thin—from which a jury could infer that he made such statements.

11

### b. Likelihood of Deterrence

On the second element, the defendants focus on the vague threats Mr. Davis described and assert that Sergeant Shroyer—not Lieutenant Fisher—confiscated Mr. Davis' cane. *See* dkt. 61 at 14. For purposes of summary judgment, though, the record shows that Lieutenant Fisher was involved in confiscating the cane, that he falsely reported the basis for confiscating it, and that he forbade Mr. Davis scooting to the dining hall. Additionally, Lieutenant Fisher told other inmates that Mr. Davis sexually abused children and told officers that he assaulted staff—both for the purpose of exposing Mr. Davis to violence. The defendants do not even attempt to argue that these actions were insufficient to deter a person of ordinary firmness from continuing to engage in protected activity. *See Holleman*, 951 F.3d at 881. Accordingly, the Court proceeds to the third element.

### c. Motivating Factor

Finally, Lieutenant Fisher argues that no evidence connects Mr. Davis's statements to his allegedly retaliatory actions. "But a retaliation claim only requires evidence that the plaintiff's protected activity was at least *a* motivating factor for the retaliatory action." *Thomas v. Anderson*, 912 F.3d 971, 976 (7th Cir. 2018) (cleaned up) (emphasis in original). And the plaintiff may satisfy this element with circumstantial evidence, such as "suspicious timing, ambiguous statements, behavior, or comments." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (internal quotation omitted).

At least two facts preclude summary judgment on this issue. First, Lieutenant Fisher's alleged misconduct was not limited to a single, isolated incident. Rather, the record depicts an extended course of conduct: confiscating Mr. Davis's cane, documenting a false justification for the confiscation, ridiculing him, forbidding him to scoot across the floor to his meals, and

providing other inmates and staff members with information that might provoke violence. A jury could reasonably view the extent of Lieutenant Fisher's misconduct—the lengths he went to—as evidence that he was driven by a specific motive, such as retaliatory animus.

Second, after Mr. Davis began filing grievances, Lieutenant Fisher said something like, "I already took your cane. You keep all this shit up, I'm going to do more." *Id.* at 8 (Davis Dep. 29:12–19). A reasonable jury could interpret a threat to "do more" retaliation as evidence that Lieutenant Fisher had already done some retaliation.

In sum, a reasonable jury could find in Mr. Davis's favor on all three elements, so his First Amendment retaliation claim will advance.

**C.     IDOC**

To prevail on his ADA claim against the IDOC, Mr. Davis must "prove that he is a qualified individual with a disability, and that he was denied access to a service, program or activity because of his disability." *Bowers v. Dart*, 1 F. 4th 513, 519 (7th Cir. 2021).[2] Again, the evidence, viewed in the light most favorable to Mr. Davis, easily satisfies these standards.

"Disability includes the limitation of one or more major life activities, which include walking, standing, bending, and caring for oneself . . . ." *Jaros v. Illinois Dep't of Corrs.*, 684 F.3d 667, 672 (7th Cir. 2012). The defendants do not dispute that Mr. Davis's leg injury and inability to walk without an assistive device constitute a disability for purposes of the ADA.

The defendants also do not dispute that, by virtue of his disability, Mr. Davis is a "qualified individual" for purposes of the ADA. Indeed, the Supreme Court has explicitly held that disabled state prisoners are qualified individuals subject to the ADA's protections. *See Pennsylvania Dep't of Corrs. v. Yeskey*, 524 U.S. 206 (1998).

---

[2] Throughout this section, the Court cites precedents applying both the ADA and the Rehabilitation Act, which "are governed by the same standards." *Bowers*, 1 F. 4th at 519.

"[T]he meals and showers made available to inmates" are programs and activities within the meaning of the ADA. *Jaros*, 648 F.3d at 672. By confiscating Mr. Davis's cane and confining him without any other assistive devices, the prison staff "kept him from accessing meals and showers on the same basis as other inmates" over the course of six weeks. *Id.* For the first week, he could not walk to the dining hall and was forbidden to eat in his cell. Some officers allowed him to scoot across the floor when Lieutenant Fisher and Sergeant Shroyer were off duty, but the evidence viewed in the light most favorable to Mr. Davis shows that he missed a significant number of meals during that time. When he moved to the SHU for 30 or 40 days, Mr. Davis could not leave his cell during the one hour per day he was permitted, as he did not have his cane and that unit lacked railings or other assistive devices. *See* dkt. 62-1 at 6 (Davis Dep. 20:3–15). Although meals were delivered to his cell during this period, he could not walk safely to the showers, which were at the opposite end of the range. Staff members carried Mr. Davis to the showers a couple times over 30 or 40 days, but he went weeks without showering and "was stinking." *See id.* at 6 (Davis Dep. 19:13–20:15), 19–20 (Davis Dep. 72:8–74:8).

To recover damages under the ADA, Mr. Davis must additionally prove that he was denied access to programs and activities through intentional discrimination. *Lacy v. Cook Cty., Ill.*, 897 F.3d 847, 856–57 (7th Cir. 2018) ("Therefore, the only remaining element for them to prove in order to collect damages was the *intentional* nature of the defendants' discrimination.") (emphasis in original). He may prove intentional discrimination by showing "deliberate indifference," which occurs when the defendant knows that harm to a federally protected right is substantially likely and fails to act on that likelihood. *Hildreth v. Butler*, 950 F.3d 420, 431 (7th Cir. 2020) (citing *Lacy*, 897 F.3d at 862).

Deliberate indifference is not difficult to show with the evidence available here. Both the Eighth Amendment and the ADA protect an inmate's rights to access meals and showers. IDOC officials at WVCF knew Mr. Davis had to walk to the dining hall to eat and that he needed a cane to walk. They confiscated his cane maliciously but provided no alternative method for obtaining meals. When he attempted to scoot to the dining hall, IDOC officials punished him by sending him to a unit where he could not walk to the showers, and they did not return his cane or provide a different accommodation.

The defendants did not fail to act on the likelihood that Mr. Davis would be deprived of a federally protected right. Rather, it seems as though they guaranteed it.

The defendants' ADA argument does not overcome the evidence discussed above. Before concluding, the Court pauses to address three problematic aspects of their briefing on this issue.

First, it applies an outdated legal framework. The defendants state that the Seventh Circuit has yet to decide whether intentional discrimination requires discriminatory animus or deliberate indifference," which is "a more relaxed method of proof" and therefore more favorable to Mr. Davis. Dkt. 61 at 20–21. But the Seventh Circuit held decisively in 2018 that "a plaintiff can establish intentional discrimination . . . by showing deliberate indifference." *Lacy*, 897 F.3d at 863.[3]

Second, the defendants assert facts that they do not support with citations to the record— and that do not appear to be supported by the record. The defendants argue that Mr. Davis's "lack of showering" in the SHU "was a choice and not a necessity" and that he did not shower there "because he declined the opportunity and not because the facility staff barred him from doing so."

---

[3] This is not the only instance of erroneous legal framing in the defendants' summary judgment brief. As noted in Part III(B)(1) above, the defendants limit their Eighth Amendment analysis to medical care, neglecting the Eighth Amendment obligations to provide adequate food and shelter and its prohibition against the gratuitous infliction of pain.

15

Dkt. 61 at 22. Mr. Davis stated in his deposition that the showers were at the opposite end of the range, 12 or 14 cells away, and that he would have to walk there without his cane or a railing and with his hands cuffed behind his back. Dkt. 62-1 at 19–20 (Davis Dep. 73:15–74:8). This evidence supports the conclusion that Mr. Davis went without showers because he could not physically reach them—not because he "declined the opportunity" to shower.

If other evidence supports the defendants' assertion, it is their duty to identify it. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be . . . disputed must support the assertion by [] citing to particular parts of materials in the record . . . ."). If not, they have no business presenting the assertion in this Court. *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief . . . the factual contentions have evidentiary support . . . .").

Finally, the defendants ask the Court to grant summary judgment on a legal theory that contradicts controlling precedent. They argue that, because Mr. Davis accessed some meals and a few showers without his cane, he only "suffered a short-lived inconvenience that neither resulted in harm nor injury." Dkt. 61 at 23. But the defendants do not cite legal authority to support their argument that Mr. Davis cannot prevail on an ADA claim if he had *some* access to meals and showers. Worse, the Seventh Circuit dismissed precisely that argument in *Jaros*:

> [Jaros] feared falling when using the toilet or shower and thus limited himself to taking only four showers monthly. He also missed meals on occasion because he could not walk fast enough to the cafeteria.
>
> [. . .]
>
> The refusal to accommodate Jaros's disability kept him from accessing meals and showers on the same basis as other inmates.

*Jaros*, 684 F.3d at 669, 672 (reversing dismissal of Rehabilitation Act claim).

16

The defendants do not acknowledge *Jaros*, much less attempt to distinguish it. Their defense is not "warranted by existing law or by a nonfrivolous argument for extending" it. Fed. R. Civ. P. 11(b)(2). Rather, their defense contradicts existing law.

The process of reviewing, researching, and ruling on a summary judgment motion demands considerable time and human capital from the Court. The cost increases when litigants do not properly support their motions or arguments—and especially when the law and evidence outright contradict the litigants' assertions.

The summary judgment procedures and standards are fundamental knowledge for litigators and should not be mysterious to experienced attorneys like defense counsel. A defendant should never file a summary judgment motion that would require the Court to disregard critical facts or controlling law. When a summary judgment response identifies facts or law unfavorable to the movant, the movant should either confront them in a reply or withdraw the affected portions of the motion. Here, the defendants did neither.

Perhaps the foregoing were mere oversights, but the Court expects better.

### IV. Conclusion

The defendants' motion for summary judgment, dkt. [60], is **granted** as to Captain Brewer and Ms. Littlejohn, and it is **denied** as to the IDOC and Sergeant Fisher. The **clerk is directed** to **terminate** defendants Brewer and Littlejohn from the docket. However, no partial final judgment will issue at this time.

Claims against the IDOC and Sergeant Fisher will be resolved by settlement or trial. The Court intends to recruit counsel to assist Mr. Davis for the remainder of the action. The **clerk is directed** to include a form motion for assistance with recruiting counsel with Mr. Davis's copy of this order. Mr. Davis is **directed** to complete and file the motion **no later than November 15,**

**2021**. If Mr. Davis does not wish to proceed with counsel, he must notify the Court **no later than November 15, 2021**. The Court requests that Magistrate Judge Dinsmore set this matter for a status conference after recruited counsel has appeared.

    **IT IS SO ORDERED.**

Date: 10/19/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

WILLIAM C. DAVIS
920421
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Margo Tucker
margo.tucker@atg.in.gov